NAOMI LAMB *v.* AARON L. CLARK.

*Trover. Bailment.*

The plaintiff and the defendant made a parol contract, by which she agreed to give him all her property, both real and personal, and he agreed to support her through life and to pay all her debts. The plaintiff stated at the time the contract was made, that she had some money and notes, which she would keep to avoid the necessity of calling upon him whenever she required small necessaries; but that she considered the money and notes, so retained, as the defendant's property, the same as though he had taken possession of them and to this arrangement the defendant assented. The parties intended to have this contract reduced to writing at a convenient opportunity, but it was never done. The defendant immediately took possession of all the plaintiff's property, except the money and notes above referred to, and fulfilled his contract by paying her debts and supporting her until the expiration of nearly three years, when she left his house and refused to return. She left the money and notes in question locked up in her trunk in the defendant's house, and the latter broke open the room and trunk where they were and took possession of them; *Held*, in an action of trover for the money and notes that the plaintiff could recover.

TROVER for a sum of money and two promissory notes, hereinafter described. The case was referred and the referee reported the following facts :

In February, 1851, the plaintiff and her sister Priscilla made an agreement with the defendant, their nephew, to give him all their property both real and personal, and he promised to maintain them though life and pay all their debts, including those of their brother Ross Lamb, which they had previously assumed. No writings were then made between them, but the parties intended to execute

such as would secure their respective rights, when suitable legal advice could be obtained. The plaintiff and her sister told the defendant that they had some money on hand, which they wished to keep by them so that they might not be obliged to call upon him every time they needed small necessaries, but that they considered the money to be his just the same. They also mentioned to him that they held some notes which they wished to retain for the same reason, and with the same understanding as to the title to them. To this arrangement the defendant assented. He did not know how much money they had, nor the amount of the notes, nor by whom signed, but supposed the value of all the money and notes retained by them to be small. He never saw the money or notes until in October, 1853.

The plaintiff then had sixty or seventy dollars in money, a note signed by Julius Clark, payable to herself or order, on demand with interest, for fifty-five dollars, and a note signed by Benjamin and John Read for one hundred dollars. And the plaintiff and her sister had a joint interest in a note signed by Martin Brown, on which about twenty dollars were due.

The defendant at once took possession of all the property embraced within the agreement, except the money and notes above described, and begun fulfiling the obligations of the agreement on his part and so continued till the death of Priscilla, which occurred March 29, 1851, up to which time no writings had been made, though the defendant had paid part of the debts of the plaintiff and Priscilla, and after the latter's death he paid her funeral expenses and purchased and set up grave stones for her. The plaintiff conveyed her real estate to the defendant May 5, 1851, and the administrator of Priscilla's estate conveyed her real estate to the defendant November 23, 1852.

The plaintiff continued to live with and was maintained by the defendant till October 1, 1853, at which time, on account of a difficulty with the defendant's wife, she left his house and told him she would live with him no longer. Previous to this time she had collected the Brown note and had exchanged the Read note for a note signed by one Benson and the Reads for one hundred dollars, dated April 1, 1851, payable to Joel Rugg or order, in three years from date with interest. On leaving the defendant's house she

locked up this note, and the one signed by Julius Clark, and fifty-eight dollars in money, in a trunk which was called her's in a room called her's, in the defendant's house, which room contained considerable property belonging to the defendant, and some wearing apparel of her own ; she also locked the door of the room and carried the keys of the room and trunk away with her. At the time she left, it was contemplated that she and the defendant would meet again after a few weeks and endeavor to settle the differences. The defendant had at this time paid debts for which the plaintiff and Priscilla were liable, to the amount of about eight hundred dollars and more than the value of all the personal property, which he had received from them other than the money and notes for which this action was brought, and he had paid all the debts of Ross Lamb, except a note of one hundred dollars due to the defendant's father, Julius Clark, who had never called on him for its payment. The defendant had been aware, for at least a year previous to October, 1853, what notes the plaintiff had retained, but he never spoke to her about them. No personal property was inventoried as belonging to the estate of Priscilla, and the only object of taking out administration thereon was that the legal title to her real estate might be conveyed to the defendant. The referee found that the defendant had maintained the plaintiff till she left him in October, 1853, according to the true meaning of his agreement, unless the conduct of the defendant's wife, the particulars of which the referee did not deem material, and did not report, operated as a breach of his agreement.

A few days after the plaintiff left the defendant's house, he broke open her room and trunk, and took possession of the money and two notes above described.

Before bringing this action, which was for the money and notes so taken by the defendant, the plaintiff demanded them of him, and he refused to give them up.

The referee also found that the notes in question were both good for their respective amounts, and that neither had been endorsed by the respective payees thereof.

The county court, at the September Term, 1855,—UNDERWOOD, J., presiding,—rendered judgment on the report, *pro forma*, for the defendant. Exceptions by the plaintiff.

*Kellogg & Stark,* for the plaintiff.

*Charles N. Davenport,* for the defendant.

The opinion of the court was delivered by

BENNETT, J.    The only question in the case is, whether from the facts found by the referee, the ownership of the property sued for, vested in the defendant.

The arrangement made between the plaintiff and her sister on one part, and the defendant on the other part, by which the latter was to have their property, both real and personal, and as a consideration for it, was to support them through life, and pay their debts, and the debts of Ross Lamb, seems not to have been consummated in all its details.

The contract was not reduced to writing, which the parties intended should be done when the legal advice could be had, so as to secure the rights of both parties.

It appears that at the time of the arrangement the plaintiff had on hand, in cash, some sixty or seventy dollars, a note against Julius Clark of fifty-five dollars, a note against the Reads of about one hundred dollars and a joint interest with her sister in a note against Martin Brown upon which some twenty dollars were due.

Though the defendant entered upon the performance of his contract, and supported the plaintiff and her sister, and paid debts, etc., and at once took possession of all the property covered by the contract except the *cash and notes specified* in the report, yet the plaintiff and her sister were permitted to retain and keep by them these items, so that they need not call on the defendant every time they needed *small necessaries,* and it seems to have been a part of the arrangement that the cash and the notes specified should remain with the sisters, and be expended by them in their support, and in this way, it is true, operate so far to relieve the defendant from liability.

The question then is, can the defendant justify the seizing of this property and taking it out of the possession of the plaintiff in violation of this agreement?

On the most favorable view for the defendant of the facts found by the referee it must be conceded that the plaintiff stood as the

Lamb v. Clark.

bailee of this property, coupled with an interest. She had not only the possession but the right of possession, and the right to expend the property for her support.

If we treat the defendant as the general owner of this property now in dispute, it is clear he could not justify the taking forcible possession of it in violation of his agreement. He had clothed the plaintiff with certain powers coupled *with an interest*; that is, with a right of possession, and a right to expend the property for her own necessities; and though the defendant may be said to have a beneficial interest in the expenditure, yet this can not justify him in the course adopted. It is well settled that a person who has a special property in a chattel may maintain trespass or trover against the *general owner*. But it may well be questioned whether the title to the money and notes was vested in the defendant. As to them, it may be claimed with some seeming propriety, that the contract was *executory*, and the rights of the defendant under it *inchoate*. The fact that the plaintiff, in consequence of some difficulty with the wife of the defendant, had left him and told him she should not live with him any longer, can have no effect in this action.

It seems the Brown note had been collected before the defendant possessed himself of the property in the manner stated in the case, and the fact that the plaintiff had exchanged the Read note for a note signed by the said Read's and one Benson, can give the defendant no greater right to this latter note than what he had to the Read note.

The result then must be a reversal of the judgment of the county court, and judgment for the plaintiff for the fifty-eight dollars in cash and the interest from the 18th day of October, 1853, and the Julius Clark note, and the note against the Reads and Benson, and the interest on them from date.

Judgment reversed, and judgment for the plaintiff accordingly.